**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NURBEK AITIEV, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    **Case No. CIV-26-997-R** |
| | ) |
| CHRIS GANTT,[1] et al., | ) |
| | ) |
| Respondents. | ) |

**REPORT AND RECOMMENDATION**

Petitioner Nurbek Aitiev, a noncitizen[2] and Kyrgyzstani national proceeding with

counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under

28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE").

United States District Judge David L. Russell referred this matter to the undersigned

Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The

undersigned set an expedited briefing schedule, Doc. 8, and the Petition is at issue. For the

reasons set forth below, the undersigned recommends that the Court grant the Petition,

Doc. 1, for habeas relief by ordering Respondents to release Petitioner subject to the

conditions of his prior parole.

---

[1] Chris Gantt was announced as Warden of Cimarron Correctional Facility in May 2026. He replaces Scarlet Grant and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I.    **<u>Background</u>**

Petitioner, a citizen of Kyrgyzstan, entered the United States and presented himself for inspection on May 5, 2023, at the San Ysidro, California Port of Entry.  Pet. at 3; Doc. 1-1 at 8 (Notice to Appear).  Also on May 5, 2023, Petitioner was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5) and was released from ICE custody.  *See* Pet. at 3, 6; Resp. at 6; Doc. 12-1 (Petitioner's I-94 admission record).  His parole was valid for one year, until May 3, 2024.  Pet. at 6; Doc. 12-1.  Petitioner alleges he has complied with all conditions of parole and immigration reporting requirements, and he lawfully worked in the country since his parole.  Pet. at 3-4, 6.  On August 22, 2023, Petitioner filed an Application for Asylum and for Withholding of Removal, which remains pending.  *Id*. at 7; Doc. 1-1 at 14 (Petitioner's Asylum Application); Resp. at 6.

On May 29, 2025, ICE formally placed Petitioner into removal proceedings before the Immigration Court through the issuance of a Notice to Appear, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(B)(i) as someone not in possession of a valid passport or other travel document.  Pet. at 6; Doc. 1-1 at 8.

On April 27, 2026, ICE re-detained Petitioner during a traffic stop while he was working as a commercial truck driver.  Pet. at 9; Resp. at 6; Doc. 12-2 (Warrant for Arrest).  Petitioner alleges he was given no notice of intent to revoke his parole, no hearing, and no individualized justification for the revocation of his parole.  Pet. at 7.  Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1).  Resp. at 7-9.

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma.  Pet. at 4; Doc. 1-1 at 6 (ICE Locator at the time of filing).  He

remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited July 1, 2026).

## II.    Petitioner's Claims

Petitioner asserts four counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges his detention under 8 U.S.C. § 1225(b)(2) violates the INA because that provision does not apply to noncitizens who, like him, were paroled into the country and later re-detained. Pet. at 8-9. Petitioner alleges he is properly detained pursuant to 8 U.S.C. § 1226(a). Pet. at 8-9.

- **Count II: Unlawful Parole Termination.** Petitioner alleges Respondents' termination of his parole was unlawful because his parole was not properly terminated and he had no opportunity to contest the termination. *Id.* at 9-10.

- **Count III: Violation of Due Process Clause.** Petitioner alleges his re-detention violates his due process rights. *Id.* at 10-11.

- **Count IV: Violation of Due Process Clause.** Petitioner also alleges his re-detention without an individualized hearing to determine whether his detention serves a legitimate government interest violates his procedural due process rights. *Id.* at 11-12.

He asks the Court to "order Respondents to immediately release [him] from custody on his own recognizance or under appropriate conditions of supervision," or alternatively "order respondents to provide [him] with a timely individualized bond hearing before a neutral immigration judge . . . at which the government bears the burden of justifying continued

3

detention." *Id.* at 12 (citation modified).  Petitioner also seeks an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").  *Id.* at 13.[3]

### III.   Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.   Analysis

#### A.   The Court has jurisdiction to consider Petitioner's claims.

As an initial matter, Respondents assert Petitioner's challenge to the decision by the Department of Homeland Security ("DHS") to terminate his parole is jurisdictionally barred.  Resp. at 9-10.  Specifically, Respondents allege 8 U.S.C. § 1252(a)(2)(B)(ii) "bars judicial review of certain discretionary decisions of the Attorney General" and "§ 1182(d)(5) clearly vests discretion in [the] Secretary of Homeland Security, permitting termination of parole when, in the opinion of the Secretary of Homeland Security, the purposes have been served."  Resp. at 9 (citation modified).

The Court should find that it has jurisdiction because Petitioner does not challenge any discretionary decision to terminate his parole.  Rather, he argues his parole was not

---

[3] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B).  Thus, the Court need not address this request at this juncture.

properly terminated and he had no opportunity to contest the termination. Thus, Petitioner is not challenging Respondents' discretionary decision to re-detain him because the purposes of his parole have been served, but that Respondents arbitrarily and improperly re-detained him *without* making any such discretionary determination or following their own procedures for re-detaining him. *See* Pet. at 9-10; *see also Mukantagara v. Noem*, 164 F.4th 765, 771-72 (10th Cir. 2026) (concluding § 1252(a)(2)(B)(ii) does not prohibit a court's review of a "nondiscretionary first step" about an eligibility determination that must precede a discretionary decision); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement— parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

Accordingly, the Court has jurisdiction here to consider Petitioner's challenge to "the adequacy of a procedural precedent to a discretionary decision." *Alcide v. de Anda-Ybarra,* No. 26-CV-00249, 2026 WL 622663, at *3 (D.N.M. Mar. 5, 2026); *see id.* (citing *Mukantagara* and holding the court has jurisdiction to review petitioner's claim his § 1182 parole was improperly revoked because "Petitioner challenges the procedural adequacy of his parole termination, not the decision itself"); *Y-Z-L-H*, 792 F. Supp. 3d at 1141 (holding § 1252(a)(2)(B) "do[es] not preclude this District Court from reviewing whether the decision to terminate Petitioner's parole was lawful"); *see also Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1623419, at *3 (W.D. Okla. Apr. 17, 2026) (recommending the Court find it has jurisdiction to consider the legality of petitioner's detention and recommending release because Petitioner's due process was violated when respondents

improperly revoked petitioner's parole) (R&R), *adopted*, No. CIV-26-320, 2026 WL 1207088 (W.D. Okla. May 4, 2026).[4]

### B. Petitioner's re-detention violated ICE regulations.

Petitioner alleges Respondents' "summary revocation of his parole and re-detention without notice or a prompt bond hearing is fundamentally unfair and unconstitutional." Pet. at 5. He asserts such termination of his parole without written notice, explanation, or opportunity to contest the termination is unlawful. Pet. at 9-10.

Individuals conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954). Pertinent here, "the statutes and regulations governing immigration and removal

---

[4] Additionally, district courts in other Circuits have held 8 U.S.C. § 1252 only strips jurisdiction for judicial review relating to final orders of removal and not challenges to detention before the issuance of such an order. *See, e.g., Kirboga v. LaRose*, 819 F. Supp. 3d 1137, 1149 (S.D. Cal. 2025) ("Where a petitioner 'does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008))); *accord* 8 U.S.C. § 1252 (titled "Judicial review of *orders of removal*" (emphasis added)).

proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99 (citation modified).

Petitioner presented himself for inspection at the border in May 2023, and immigration officials subsequently paroled him into the United States under 8 U.S.C. § 1182(d)(5). Doc. 1-1 at 8; Doc. 12-1. This section grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [the DHS Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Humanitarian parole may be terminated in two ways. First, parole terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). With automatic termination of parole, no written notice is required. *Id.* Second, if parole is not terminated automatically, revocation of parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And, in this case, parole will only be terminated when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or on notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered shall be executed." *Id.* "If the exclusion, deportation, or removal order

cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." *Id*. Accordingly, unless detention is required for the timely removal of a noncitizen, continued detention following earlier release on parole must be supported by an individualized assessment by an authorized DHS official. Otherwise, implementing regulations require that a noncitizen be released again to humanitarian parole. *See, e.g., Erwin M.L. v. Warden of the Mesa Verde ICE Processing Ctr.*, No. 26-CV-01049, 2026 WL 1256421, at *4 (E.D. Cal. May 7, 2026) ("The parole scheme . . . requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying a parolee's detention."); *Caisa Telenchana v. Hermosillo*, No. 26-CV-363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) ("The applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply.") (citation modified).

Respondents argue 8 U.S.C. § 1225(b)(1) governs Petitioner's detention because he presented himself at the border and was released on parole, meaning he was never admitted to the country. Resp. at 7-9.[5]    However, Respondents fail to meaningfully address

---

[5] While Respondents allege Petitioner remains subject to § 1225(b) after he was released on parole and more than two years after that parole expired, Judges in this District have held otherwise. *See, e.g., Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2

Petitioner's allegations that they improperly terminated his parole without written notice, explanation, or opportunity to contest the termination is unlawful.

Further, expiration of Petitioner's parole does not justify his re-detention because his continued detention following earlier release on parole, even when expired, must be supported by an individualized assessment by an authorized DHS official. *See Abdurakhmonov v. Grant*, No. CIV-26-277-SLP, 2026 WL 1166459, at *3 (W.D. Okla. Apr. 29, 2026) (R&R) (concluding respondents "cannot rely on the automatic termination cause to justify Petitioner's parole revocation," and recommending release subject to the conditions of petitioner's earlier parole); *see also Arce Padilla v. Mullin*, No. 26-CV-270, 2026 WL 1245462, at *4 (D. Nev. May 6, 2026) ("Here, DHS's failure to detain [petitioner] upon the expiration of his parole effectively continued [petitioner's] parole status.").

Based on the record evidence, Respondents violated their own regulations when they revoked Petitioner's parole without notice of a reasoned decision for the revocation.[6] *See, e.g.*, *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to

---

(W.D. Okla. Apr. 7, 2026) (finding "Petitioner's detention does not arise from any ongoing entry or inspection process, but from ICE's decision to place him in removal proceedings" and "in that posture, detention is properly understood as detention pending a decision on whether the alien is to be removed, which falls within Section 1226(a), notwithstanding Petitioner's initial classification at the time of entry." (citation modified)); *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) (same).

[6] While it appears that DHS sent the May 2025 Notice to Appear to Petitioner by "regular mail" on May 29, 2025, Doc. 1-1 at 9, there is no evidence in the record Petitioner ever received the Notice. Further, the Notice does not provide a reasoned decision for the revocation of Petitioner's parole, which had existed for two years—including one year after its initial "expiration" date.

the revocation of [petitioner's] parole; nor do they articulate, even now, either that the purpose for which [petitioner's] parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *Y-Z-L-H*, 792 F. Supp. 3d at 1137-38 ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

> **C.    Respondents violated Petitioner's due process by improperly revoking his parole.**

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen.  *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695.

Contrary to Respondents' assertions, "when the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sep. 26, 2025) (citation modified); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "noncitizens acquire a liberty interest once released from immigration detention").[7] Upon

---

[7] Notably, the Due Process Clause does not provide noncitizens a liberty interest in being released on parole. *See Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001). However, noncitizens are entitled to the process provided in a statute

re-detention, Respondents deprived Petitioner of his protected status when they revoked his parole and placed him in custody.

All three *Mathews* factors weigh in favor of Petitioner. First, Petitioner has a significant private interest in remaining free from detention after spending years on parole. He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) in May 2023, during which time he legally worked as a commercial truck driver, complied with tax laws, and made economic contributions to the United States. Pet. at 3-4. During this time, Petitioner's interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Further, "Petitioner's liberty interest does not evaporate when a term of parole expires." *Juan Carlos V.B. v. Chestmut*, No. 26-CV-03077, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, No. 26-CV-00358, 2026 WL 837109, at *5 (D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations"). Accordingly, the first *Mathews* factor favors Petitioner.

Second, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has not received any notice of the reason for his parole revocation and simple procedures exist that would mitigate those risks. "Constitutionally inadequate

---

and/or regulations. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). And, as discussed, Petitioner was entitled to notice and an individualized termination under ICE's own regulations when his parole continued after its initial expiration. *See* 8 C.F.R. § 212.5(e).

notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026) (R&R), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Petitioner received no procedural safeguards to determine whether the revocation of his parole and his detention were justified, and thus Respondents have detained him without any stated cause. This factor also weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court must consider the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at \*6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T]he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *Khudaev v. Blanche* No. 25-CV-01291, 2026 WL 1602029, at \*10 (D.N.M. June 4, 2026) (finding "Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner written notice"). Here, the undersigned can discern no significant administrative or fiscal burden associated with placing the burden on the government to

13

follow its own regulations, especially given Petitioner's detention was not deemed necessary for almost three years. *See, e.g., Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation.").

Accordingly, Respondents' revocation of Petitioner's parole in violation of their own regulations violates his right to due process.

### D.    The proper remedy is release.

Consistent with Chief Judge Palk's recent approach with a similarly situated petitioner, the undersigned recommends the Court order Petitioner's release subject to the conditions of his prior parole under § 1182(d)(5). *See Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at *2 (W.D. Okla. May 4, 2026) (directing respondents "to immediately release Petitioner, subject to the conditions of his prior parole issued under 8 U.S.C. § 1182(d)(5)" and enjoining respondents "from re-detaining Petitioner unless, prior to such re-detention, Petitioner is provided with written notice and a pre-deprivation hearing before a neutral decision maker"); *see also Khudaev*, 2026 WL 1602029, at *10 (holding "the appropriate remedy is release" where petitioner's due process was violated when his § 1182 parole was improperly revoked).

### E.    The Court should decline to address Petitioner's remaining claims.

Petitioner also alleges his continued detention without a bond hearing violates the INA and due process. Pet. at 8-12. If the Court adopts the undersigned's recommendation that Petitioner be released because Respondents violated their own regulations and his due process rights were violated when they improperly revoked his parole, the Court should

14

decline to decide the merits of Petitioner's remaining claims because, at most, he would only be entitled to lesser relief in the form of a bond hearing. *Accord Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 n.2 (W.D. Okla. Dec. 22, 2025) (declining to decide the merits of a petitioner's due process claim when granting a bond hearing pursuant to § 1226(a)).[8]

### V.     **Recommendation and Notice of Right to Object**

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief by ordering Respondents to release Petitioner immediately, subject to the conditions of his prior parole. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **July 9, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **July 14, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

---

[8] To the extent Petitioner alleges he should be released because he was improperly arrested without a warrant, *see* Reply at 2-3, 11-14, that argument was too late and improperly raised for the first time in his reply. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (recognizing "general rule" "that a party waives issues and arguments raised [] for the first time" in a reply brief); *Stillwater Designs & Audio Inc. v. Klein*, No. CIV-24-784-SLP, 2025 WL 365651, at *2 n.7 (W.D. Okla. Jan. 31, 2025) (declining to consider arguments raised for the first time in reply).

**ENTERED** this 1st day of July, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE